IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS

IN RE:    JERRY M. and AMELIA W. FRANKUM,           4:05-BK-27198  E
          Debtors                                    CHAPTER 7

ORDER DENYING DEBTORS' MOTION FOR REFUND

On August 19, 2007, the Court heard the *Debtors' Motion for Refund* filed by Plaintiffs Jerry M. Frankum and Amelia W. Frankum (the **"Debtors"**), and the *Trustee's Response to Debtors' Motion for Refund* filed by James C. Luker, the Chapter 7 Trustee (the **"Trustee"**).  In response to the Debtors' motion, Heartland Community Bank and Pulaski Bank and Trust (the **"Creditors"**), each filed a *Response and Objection To Debtors' Motion for Refund.*  Nicolas Correy appeared on behalf of the Debtors, and Debtor Amelia Frankum was present.  The Trustee represented himself, and Lance Owens represented Pulaski Bank and Trust. Mr. Owens announced that although Heartland Community Bank's counsel, Rosalind Mouser, was unable to appear, he was authorized to inform the Court that both Creditors joined the Trustee in his objection to the Debtors' motion.

The *Debtors' Motion for Refund* seeks repayment, from the bankruptcy estate, for a portion of the 2004 taxes that the Internal Revenue Service (**"IRS"**) levied against the Debtors' social security benefits[1] following the entry of their Chapter 7 discharge.  The

---

[1] The Internal Revenue Code permits a designated tax official to collect taxes by levy against any property owned by debtors. 83 C.J.S. *Subrogation* § 6 (2008).  Involuntary tax

Debtors argued that the bankruptcy estate had sufficient funds to pay all priority claims in full and that if the Trustee had paid the tax debt in a timely manner they would not have had to pay it. Consequently, they seek a refund from the estate on the same priority basis that the estate would have paid the IRS.[2] The Trustee maintains that 11 U.S.C. § 507(d) specifically reserves priority status for the taxing authority but may allow for subrogation in the amount of the claim on an unsecured non-priority basis. In the event the Debtors are entitled to subrogation on an unsecured non-priority basis, the Trustee states that the estate must be fully administered before making a determination as to what funds, if any, will be available for non-priority creditors. The Trustee requests that if the Court awards the Debtors any refund it be applied to reduce their outstanding debt to the estate.[3] The Creditors joined in the Trustee's objections, and the Court took the motion under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

---

payments are defined as, ". . . any payment[s] received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes. . ." *Amos v. Commissioner*, 47 T.C. 65, 69 (1966).

[2] The Debtors do not cite any authority (either statutory or case law) to support their request for a refund.

[3] The Trustee withdrew an objection to the Debtors' exemptions on the condition that Debtors purchase certain personal and real property. The Debtors were required to pay to the Trustee an additional $278,048.00 for their homestead exemption, an additional $40,665.00 for certain household goods, immediate delivery of all Carroll Clear paintings, an additional $17,600.00 for their 1999 Jaguar, and an additional $30,000 for accounts receivable (valued at $99,869) from Dr. Frankum's medical practice. As of the hearing date, the Debtors still owed $39,278.12 to the bankruptcy estate on this obligation.

## FACTS

On October 14, 2005, Jerry M. and Amelia W. Frankum filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The IRS filed a proof of claim on December 27, 2005, listing pre-petition federal taxes of $34,180.64, including all taxes and interest, and a non-priority unsecured claim of $1,153.74, including all penalties accrued and assessed prior to October 14, 2005. Debtors received a Chapter 7 discharge on April 14, 2006. There is no dispute in this case that the IRS tax claim is nondischargeable under §§ 523(a)(1)(A)[4] and 507(a)(8)(A).

Between March 2007 and July 2007, the IRS levied $10,967.94 against the Debtors' social security benefits. According to an IRS Account Transcript for the Debtors' 2004 tax year (Debtors' Exhibit A), the IRS sent Debtors an Intent to Levy Notice, on September 23, 2006, November 20, 2006, and December 5, 2006, and the Debtors signed return receipts on the November and December notices. Subsequently, the IRS levied on Debtors' social security benefits beginning on March 23, 2007, and continued to withhold monthly payments until July 30, 2007. The $10,967.94 collected by the IRS through these levies was applied to the IRS's unsecured priority debt, reducing the amount owed to $23,212.70. The Debtors maintain that according to the Trustee's Interim Report for the period ending June 30, 2007

---

[4] Section 523(a)(1)(A) provides in pertinent part that "(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt . . . (1) for a tax . . . (A) of the kind and for the period specified in section 507(a)(8)(A)." 11 U.S.C. §§ 523(a) and 507(a)(8)(A). Section 507(a)(8)(A)(i) provides that if a tax return was filed within a three-year period, before or after the filing of a petition for bankruptcy, it is entitled to priority treatment. *I*d.

(docket #217), the estate had sufficient funds at the time of the levy to cover all priority claims. However, a review of the Trustee's Interim Report reveals that as of February 28, 2007, just before the IRS began levying in March 2007, Estate Cash Receipts and Disbursements Record listed a balance of $60,311.80, and priority claims had been filed in an amount totaling $66,204.27 (the IRS' priority claim at that time was $34,180.64, and the Arkansas Department of Finance and Administration had filed a priority claim for $32,023.63).[5] By June 30, 2007, the estate had a balance of $226,528.41. Thus, at the beginning of the levies, there were not sufficient funds to pay all priority claims, but there were sufficient funds to pay all such claims later on (although the Debtors had not yet moved or requested that the IRS claim be paid).

Meanwhile, on July 3, 2006, the Trustee filed a timely *Objection to Exemptions*. On June 13, 2007, the Trustee withdrew the *Objection to Exemptions* on condition that Debtors purchase certain real and personal property from the estate. The Trustee and Debtors entered into a compromise that provided for Debtors to pay the Trustee the settlement sum of $238,769,88. As of the hearing date on the *Debtor's Motion for Refund*, the Debtors still owed the sum of $39,278.12 to the Trustee.

On September 25, 2007, Debtors filed a *Motion to Allow and Pay Priority Claim* to the IRS for the total amount of unsecured priority debt of $34,180.64. The IRS filed an

---

[5] The Court takes judicial notice of all documents filed in the current case. *See* Fed.R.Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n.2 (Bankr. W.D. Ark. 2000).

amended tax claim on October 16, 2007, in the amount of $24,366.44. This Court granted the *Motion to Allow and Pay Priority Claim* to the IRS on October 29, 2007, and the Trustee promptly paid the IRS the sum of $23,212.70.[6] Debtors filed a *Motion for Refund from Trustee* on July 8, 2008, for the sum of $10,967.94, the amount the IRS levied against Debtors' social security benefits. The Trustee filed a *Response to Debtors' Motion for Refund* citing three reasons for his objection: (1) pursuant to 11 U.S.C. §507(d) the tax claim is not entitled to priority status, (2) even if the amount of the IRS claim is subrogated, it is still undetermined whether there will be any available assets left over for general unsecured creditors, and (3) the Debtors still owe money to the estate for the settlement of exemptions. The Creditors separately filed *Objections to Motion for Refund* referencing related adversary proceedings in which they assert the Debtors gained certain tax advantages as a result of an alleged fraudulent sale of assets.[7]

## ANALYSIS

The issue before the Court is whether the Debtors, whose assets were levied on post-discharge by the IRS, are entitled to be reimbursed prior to the payment of other claims from

---

[6] The Court takes judicial notice that on September 28, 2007, the Trustee reported a $220,520.08 balance on the Estate Cash Receipts and Disbursements Record. The funds in the account have steadily increased between 2006 and 2008 (except for when the Trustee used funds to pay for legal services). On June 30, 2008, the balance in the account was $456,147.29.

[7] An adversary proceeding (AP No. 07-1247) has been filed by the Trustee in this case and the Trustee in the related case of Healthcare Business Solutions, Inc. against Pulaski Bank and Trust, Heartland Community Bank and Ruffin and Jarrett Funeral Home, Inc. seeking to set aside an Asset Purchase of Newport Hospital and Clinic, Inc. Heartland and Pulaski Bank and Trust assert that the Debtors obtained certain tax benefits as a result of the sale of the hospital, and therefore object to the Debtors receiving any refund related to income tax issues.

the bankruptcy estate for non-dischargeable, pre-petition taxes that were not paid by the Trustee.

Usually, funds are distributed by the trustee on a priority basis when they become available. *See* 11 U.S.C. §§ 726(a); 507(a). Section 704 of the Bankruptcy Code refers to the duties of the trustee but does not specifically state a time frame in which the trustee must pay these claims. In the absence of a statutory time limit, the Court is to determine if the Trustee worked to close the estate as "expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a). The Supreme Court has held, ". . . the trustee's general obligation to pay claims including tax claims, takes effect only when and if they are allowed and distribution is ordered." *Nicholas v. U.S.*, 384 U.S. 678, 698 (1966).

In this case, the Debtors received a Chapter 7 discharge in April 2006. In July 2006, the Trustee filed an *Objection to Exemptions,* but the Trustee and the Debtors did not reach a compromise and settlement until June 2007. Beginning in September 2006, the IRS sent Debtors notices informing them of its intent to levy on post-petition assets.[8] The IRS levied on the Debtors' social security benefits from March 2007 through July 2007, and the Debtors filed a Motion for the Trustee to pay the IRS on September 25, 2007 (approximately one year after the IRS sent its first notice of its intent to levy on September 23, 2006). In November 2007, this Court granted the motion to pay the IRS claim, and one week later, the

---

[8] When a debtor files under Chapter 7, all collection proceedings, including tax claims, are automatically stayed. However, once a debtor is granted a discharge collection efforts may continue on nondischargeable debt. 11 U.S.C. §§ 362(a). By provision of the Internal Revenue Code, a tax collector may levy on all assets, except ones that are exempt, where a person is liable for past taxes. 26 U.C.A. § 6331.

6

Trustee disbursed the unpaid portion of the priority tax claim.

During the time the IRS levied on Debtors' social security benefits, the Trustee was engaged in determining the available assets for unsecured creditors, both priority and non-priority. The Trustee filed a timely *Objection to Exemptions* on July 3, 2006, but the Debtors and Trustee did not reach a compromise settlement until almost one year later, on June 13, 2007. In addition, the Debtors were aware of the IRS levy one year prior to filing the motion to allow and pay the priority claim, yet they did not file a motion asking the Court to order the Trustee to pay the claim until September 2007. A review of the claims register and Trustee's interim report for the period ending June 30, 2007, reveals that the Trustee did not have sufficient funds to pay the IRS' priority claim prior to the levy (although such funds were available towards the end of the levy). The Court finds that the Trustee fulfilled his duty to the unsecured creditors by collecting and disbursing funds in a timely manner that was in the best interests of the estate.

Moreover, the Trustee is correct that the Debtors cannot be refunded the taxes they paid before general unsecured creditors because 11 U.S.C. § 507(d) specifically reserves priority status for the taxing authority. Under § 507(d), "an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection . . . (a)(8) . . .of this section is not subrogated to the right of a holder of such claim to priority under such subsection." 11 U.S.C. § 507(d). (Section 507(a)(8)(A)(i) provides priority treatment for taxes based on tax returns filed within the three-year period before or after the filing of a bankruptcy petition.) In other words, a person who is compelled to pay a tax debt by levy may be entitled to

7

subrogate such debt, provided all other necessary conditions are met; however, §507(d) specifically disqualifies a paying party from adopting the priority status of a taxing authority. *In Re Allen*, 359 B.R. 1, 4 (Bankr. D. Mass. 2006).

The Court agrees with the Trustee that under §507(d), the Debtors do not qualify for priority status, and the Trustee cannot refund to them the amount of taxes they paid. Further, the Debtors may not be reimbursed for the amount of the taxes they paid on statutory or equitable grounds because as debtors primarily responsible for the nondischargeable taxes, the taxes they paid cannot be subrogated to the IRS' claim, as explained below.

"Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dan B. Dobbs, *Law of Remedies* § 4.3 at 404 (2d ed. 1993). The right to assert those rights is not automatic and courts must look to the particular facts and circumstances of a case to determine if subrogation is appropriate. *In re Co-Build Companies, Inc.* 21 B.R. 635, 636 (Bankr. E.D. Pa. 1982). Subrogation may arise in two different contexts: (1) when a person who is not liable for a debt pays a creditor and seeks reimbursement from the debtor for the monies paid to that creditor; or (2) when a person is liable for the debt as a codebtor, surety or guarantor, and seeks reimbursement of the debt he has paid. See 3 Collier on *Bankruptcy* § 54.02 (Matthew Bender 15th Ed. Rev.).

In bankruptcy cases, the rights of subrogated parties may be asserted under two different subrogation theories: statutory subrogation, under §§ 507 and 509, and equitable subrogation based on a theory of unjust enrichment. *In Re Fiesole Trading Corp.,* 315 B.R.

198, 201 n.5 (Bankr. D. Mass. 2004). Bankruptcy courts are split as to whether equitable subrogation is preempted by the requirements of statutory subrogation. *In Re Photo Mechanical Services, Inc.,* 179 B.R. 604, 618 (Bankr. D. Minn. 1995). Some courts hold that since the codification of §509, subrogation is governed exclusively by the Bankruptcy Code while others hold that certain factors, under equitable subrogation, must be met before a party may invoke statutory subrogation. *Id.* at 619. In this case, the Court need not decide the preemption issue because Debtors are not entitled to subrogation under either theory.

To invoke subrogation under §509(a), a party must show that (1) he is "liable with the debtor" on the debt, or (2) he has paid the debt of another. *In Re Photo Mechanical Services, Inc.,* 179 B.R. at 618. By inference, § 509 does not allow a debtor to be subrogated to his own debt. *See e.g., In Re Allen,* 359 B.R. 1, 4 (Bankr. D. Mass. 2006) (A Chapter 7 debtor could not be "liable with the debtor" with respect to a personal tax liability that he paid directly to the IRS because he could not be liable with himself, and, thus, did not qualify for subrogation under §509(a).); *In re Hagan,* 147 B.R. 166 (Bankr. N.D. Iowa 1992) ("Indeed, because they are debtors, not codebtors, [the bankruptcy debtors] do not qualify as subrogees under 11 U.S.C. § 509.").

Under a theory of equitable subrogation, a person who pays the debt of another may seek reimbursement to prevent unjust enrichment. *In Re Hall*, 295 B.R. 877, 881 (Bankr. W.D. Ark. 2003). To invoke the doctrine of equitable subrogation, five criteria must be met: (1) the party seeking subrogation must have made the payment to protect his own interest; (2) the party seeking subrogation must not have acted as a volunteer; (3) the party seeking

subrogation must not have been primarily liable for the debt; (4) the party seeking subrogation must have paid off the entire debt; and (5) subrogation must not work injustice to the rights of others. *In Re Flamingo 55, Inc.,* 378 B.R. 893, 919 (Bankr. D. Nev. 2007).

Under either § 509 or the doctrine of equitable subrogation, the Debtors are not entitled to be reimbursed for the taxes they paid because they were at all times liable to the IRS for such taxes; they were not co-debtors with the Trustee, and they did not pay the taxes on behalf of the Trustee. *See In re Hagan*, 147 B.R. 166.

## CONCLUSION

The Trustee has paid claims in this case in a timely manner, and any delay in paying the IRS claim in this case was due to the ongoing and complex administration in this case. Further, the Debtors did not move for a Court order requiring the Trustee to pay the tax claim until six months after the IRS began levying their social security benefits despite having had notice of the IRS's intent to levy for one year. In any case, the Debtors are statutorily precluded from obtaining the priority status which Congress reserved for the taxing authority, and therefore, the Debtors cannot be refunded on a priority basis. Finally, as the parties responsible for the taxes they paid, the Debtors are not entitled to subrogation under either statutory or equitable grounds. Because the estate does not owe and will not owe the Debtors reimbursement for the amount levied, the Trustee's concerns about offsetting this amount against what the Debtors owe the estate is moot. For these reasons, it is hereby

**ORDERED** that the Debtors' Motion for Refund is **DENIED**.

**IT IS SO ORDERED.**

_____
**UNITED STATES BANKRUPTCY JUDGE**

**DATE:** January 5, 2009

cc: Debtors
    Nicolas Corry, Debtors' attorney
    Frederick Wetzel, Debtors' attorney
    James C. Luker, Trustee
    Phyllis Jones, Trustee attorney
    Ms. Rosalind Mouser, counsel for Heartland Community Bank
    Mr. Lance Owens, counsel for Pulaski Bank and Trust
    all parties per matrix